**Date signed May 04, 2004**



E. STEPHEN DERBY
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| COLEMAN CRATEN, LLC, | * | Case No.: 99-5-6381-SD |
| | * | |
| Debtor. | * | Chapter 7 |
| | * | |
| * * * * * * | * * * * * * * | |
| In re: | * | |
| | * | |
| MONICA LYNN COLEMAN | * | Case No.: 99-5-6239-SD |
| | * | |
| Debtor. | * | Chapter 7 |
| | * | |
| | * | Jointly Administered Under |
| | * | No. 99-5-6381-SD |
| | * | |

**<u>PARTIAL RULINGS ON MOTION TO REPLACE CHAPTER 7 TRUSTEE IN COLEMAN CRATEN, LLC AND MONICA LYNN COLEMAN BANKRUPTCY CASES</u>**

A motions hearing in the above-referenced cases is scheduled for May 10, 2004, on the following matters.

On September 22, 1999, Monica Lynn Coleman ("Ms. Coleman"), proceeding *pro se*, filed a motion to replace the Chapter 7 Trustee, Lori Simpson,[1] from the administration of the Coleman Craten and Monica Lynn Coleman bankruptcy cases. The cases are jointly administered under Case No. 99-56381. In the motion, Ms. Coleman made an assortment of allegations against the Trustee. In order to accurately describe Ms. Coleman's allegations, they are reprinted, in relevant part, below:

> 10. The Trustee . . . breached her fiduciary duty(s) in failing to provide . . . appropriate notice, disclosure and/or obtain [c]ourt [o]rders for her . . . actions.
>
> 11. In doing so, [the Trustee] deprived [Ms.] Coleman of her Constitutional right of due process . . . [which caused] irrevocable damage to the Debtor, the [c]reditors, the bankruptcy estate(s) . . . . . . . [The Trustee] confiscated everything [Ms.] Coleman owned . . .; destroyed [Ms.] Coleman's business and defamed [Ms.] Coleman. [When the Trustee] took . . . th[ese] actions, [Ms.] Coleman had not . . . been notified that Ms. Simpson was assigned as the Trustee.
>
> 12. . . . [T]he Trustee . . . did nothing while innumerable thefts occurred, despite the fact that [she] had notice of [the] thefts.
>
> 1[3].[2] . . . [T]he Trustee . . . failed to perform the requisite due diligence in obtaining and investigating information in order to make an informed decision. . . . [The Trustee] elected to take action causing irreparable harm to all interested parties within the bankruptcy relationship, based on "press reports" and unadjudicated [sic] allegations.
>
> 1[4]. In failing to perform her due diligence, [the Trustee made] false statements before the [c]ourt, whereby [the Trustee] claimed she had

---

[1] On May 7, 1999, Ms. Coleman filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On May 11, 1999, Coleman Craten, LLC ("Coleman Craten) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter, Lori Simpson ("Ms. Simpson") was appointed as Trustee for Ms. Coleman's case. On May 13, 1999, the court converted the Coleman Craten case to a Chapter 7 case. (P. 12.) The U.S. Trustee then appointed Ms. Simpson to serve as Trustee in both cases.

[2] In her motion, Ms. Coleman incorrectly described paragraphs 13 to 20 as 12 to 19. The court has re-numbered the paragraphs using brackets.

written proof of transactions that showed [Ms.] Coleman was involved in a criminal scheme to divert funds from creditors. . . .

1[5]. . . . [The Trustee] failed to correct her mistake. In fact, [she] has . . . intentionally conceal[ed] her mistake. [The Trustee's] malfeasance continues to cost the estate unnecessary billable hours . . . .

1[6]. [The Trustee's] actions . . . are geared to finding evidence to support allegations for which she has misrepresented that she had "proof" and to further massage the [c]ourt . . . into accepting circumstantial evidence to replace the "hard proof" she originally claimed. . . .

1[7]. [The Trustee] has stymied [Ms.] Coleman's access to documents.

1[8]. [The Trustee] has failed to notify . . . creditors [of Ms.] Coleman's proposals to pay them while simultaneously encouraging . . . [c]reditors to file [c]omplaints to prevent discharge. [The Trustee] took action to replace [Ms.] Coleman's good faith efforts with vicious rumors of criminal schemes and hidden funds.

1[9]. [The Trustee's] false statements and concealment of same, coupled with her actions of punishment against [Ms.] Coleman, has [sic] destroyed [Ms.] Coleman's business, . . . career[,] and has [sic] made it impossible for [her] to pay creditors.

[20]. . . . [The Trustee] has misled [c]reditors into believing that she . . . found hidden funds wherein the [c]reditors would be able to recapture their money. . . .

On October 18, 1999, the U.S. Trustee filed a response, arguing that Ms. Coleman's motion failed to state a cause of action against the Trustee. The Trustee and a set of creditors also filed similar oppositions arguing that (1) Ms. Coleman had not stated a case that would justify removal; and (2) her removal would result in significant delay to the bankruptcy proceedings and additional expense to the estates.

The court held a hearing on the motion on February 3, 2000. At the hearing, Ms. Coleman, in proper person, called the Trustee's attorney, Martin Fletcher ("Mr. Fletcher"), as a witness. The entire examination of Mr. Fletcher took approximately two and a half hours. His testimony revealed the following facts:

> (1) after the Trustee was appointed, she employed Financial Conservators, Inc. as Asset Manager and Auctioneer in the liquidation of the estates;
> (2) Richard Gray ("Mr. Gray") is a member of Financial Conservators, Inc.;
> (3) a Maryland circuit court had previously assigned Mr. Gray to serve as the conservator in a case involving James and Carol Hyde against Ms. Coleman;
> (4) Mr. Fletcher opined that Mr. Gray's prior involvement with Ms. Coleman's affairs did not make Financial Conservators, Inc., an "interested party" for purposes of the bankruptcy cases;
> (5) on May 13, 1999, Mr. Fletcher and Mr. Gray accompanied the Trustee to Ms. Coleman's residence to inventory and secure the estate's assets;
> (6) the Trustee attempted (unsuccessfully) to contact Ms. Coleman by telephone on at least one occasion prior to going to her residence;
> (7) Ms. Coleman was not present when the Trustee arrived and the residence was locked; the Trustee employed a locksmith to gain access to the home;
> (8) upon entry, the Trustee discovered papers, financial records, receipts and dirty dishes strewn throughout the home;
> (9) the Trustee found a note referencing a plan to conceal Ms. Coleman's assets from her creditors;
> (10) the Trustee secured the loose documents and changed the locks at the residence;
> (11) sometime after the Trustee secured the residence, Ms. Coleman filed a police report alleging that several items were missing from the house;
> (12) the Trustee investigated the allegations and found no evidence of theft; afterward, the Trustee installed surveillance cameras at the residence;
> (13) on May 13, 1999, the court held an emergency hearing on James and Carol Hyde's motion to convert Coleman Craten's case from a Chapter 11 to a Chapter 7;

>(14) the Trustee attempted to contact Ms. Coleman through Coleman Craten's attorney to inform her about the hearing;
>(15) Coleman Craten's attorney indicated that Ms. Coleman was unable to attend the hearing;
>(16) after the hearing, the court converted Coleman Craten's case to a Chapter 7;
>(17) the Trustee sent copies of motions that had been filed in Ms. Coleman's bankruptcy case to the Baltimore Sun;
>(18) the motions contained allegations that Ms. Coleman was concealing assets from her creditors and attempting to defraud another potential creditor (Mr. Curran) into extending a loan to her;
>(19) the Baltimore Sun used the allegations in the motions to publish articles about Ms. Coleman in its newspaper.

At the conclusion of Mr. Fletcher's examination, but before Ms. Coleman rested her case, the court indicated that Ms. Coleman had failed to produce evidence that would warrant the Trustee's removal. The court further remarked that it was having difficulty understanding her reasons for seeking removal. Ms. Coleman responded that the Trustee had acted "maliciously" in sabotaging her prospective loan arrangement with Mr. Curran by collaborating with the Baltimore Sun and, as a result, Coleman Craten's creditors lost the opportunity to be fully reimbursed. The court explained that the Trustee had a duty under Chapter 7 to liquidate Coleman Craten's estate, not assist in a reorganization effort.

Ms. Coleman responded that the Trustee breached her duties by (1) failing to notify Ms. Coleman before she took control of her residence and the estate's assets; (2) failing to notify Ms. Coleman of the May 13, 1999, emergency hearing regarding the conversion of Coleman Craten's case; (3) hiring Financial Conservators, Inc., without disclosing Mr. Richard's previous involvement in the circuit court litigation between the Hydes and Ms. Coleman; and (4) "knowingly and falsely" accusing her of fraud in order to sabotage the loan transaction with Mr. Curran.

The court stated that Ms. Coleman would have to produce more evidence than Mr. Fletcher's testimony in order to sustain her motion. Because of the length and apparent insignificance of Mr. Fletcher's testimony and the murky state of Ms. Coleman's evidence against the Trustee, the court stopped the hearing and directed Ms. Coleman to make a written proffer of evidence showing how the Trustee acted outside the scope of her duties. The court said it would use Ms. Coleman's proffer to streamline her issues against the Trustee and to conduct a more focused proceeding at the next scheduled hearing date.

On March 28, 2000, Ms. Coleman submitted a written proffer to the court. (P. 213.) In the proffer, she has identified six witnesses (in addition to Mr. Fletcher) whom she intends to call at the May 10 hearing. She has not revealed the identities of her proposed witnesses.[3] Morever, rather than proffering specific evidence against the Trustee, Ms. Coleman has described the proposed testimony of each witness (for the most part) in a vague and conclusory manner. To illustrate this point, portions of each witness's proposed testimony are provided below:

(1) <u>Witness 2 - "An attorney who works with a lot of bankruptcy cases"</u>

> . . . [T]he witness will establish the following facts:
>
> Ms. Simpson made no reasonable effort to contact [Ms.] Coleman regarding Ms. Simpson's assignment as a Trustee. Ms. Simpson made no reasonable effort to contact [Ms.] Coleman prior to forcibly entering and confiscating [Ms.] Coleman's homes. Ms. Simpson made no reasonable attempt to inform [Ms.] Coleman . . . that she was going to participate with a creditor to convert Coleman Craten, LLC from a Chapter 11 to a Chapter 7 bankruptcy.

---

[3] The closest Ms. Coleman comes to identifying one of her witnesses is her description of "Witness #2" - "An expert witness: An attorney who works with a lot of bankruptcy cases."

\* \* \*

Ms. Simpson made no reasonable attempt to notify the Debtor or to give the Debtor an opportunity to respond to the . . . allegations made by the Trustee regarding documents [that she found at Ms. Coleman's residence] prior to using them as evidence [at the emergency hearing] to convert Coleman Craten, LLC [f]rom a Chapter 11 to a Chapter 7 bankruptcy.

\* \* \*

Mr. Hyde is a creditor of the Coleman Craten . . . estate. Mr. Hyde had an adverse interest in the estate. . . . Mr. Gray was the conservator assigned by the [circuit] [c]ourt to protect the interests of Mr. Hyde in investigating the financial matters of [Coleman Craten]. . . . The Trustee failed to disclose Mr. Gray's relationship with Mr. Hyde to [this] [c]ourt or any of the interested parties in the estates.

At the [e]mergency [h]earing . . . Ms. Simpson misrepresented a . . . $400,000.00 deposit slip account number . . . that she stated represented proof of [Ms.] Coleman's scheme to defraud creditors by hiding funds.

\* \* \*

At the hearing, the Trustee placed [the] letter [she found at Ms. Coleman's residence] under seal. . . . [Ms.] Coleman knew nothing about the letter. Ms. Simpson represented the letter as "written evidence of a scheme to hide assets." [Ms. Coleman provided the Trustee with] exculpatory evidence [regarding the letter, which the Trustee failed to produce at the hearing to convert Coleman Craten's bankruptcy case].

\* \* \*

[Ms.] Coleman had obtained a commitment for a [$5,000,000.00] loan . . . for the purpose of paying creditors and re-establishing . . . the company. . . . Coleman Craten's attorney prepared a [d]ismissal document because with the proceeds of the loan Coleman would no longer need to be in bankruptcy. . . . Ms. Simpson filed an objection to the [d]ismissal. The Trustee . . . gave the documents to the press. The press printed a story based on the document. . . . [Ms.]

7

>  Coleman met with the person who was releasing the loan. He was really upset over the article. . . .

(2) <u>Witness 3</u>

> This witness will establish the following facts. . . :
>
> . . . [T]he Trustee did not attempt to contact [Ms.] Coleman's home prior to taking action against [Ms.] Coleman on May 13, 1999.
> Mr. Hyde had an adverse interest to the estate. . . .
>
> The Trustee knew or should have known that the deposit slip account number belonged to Mr. Hyde prior to misrepresenting the document before the [c]ourt. . . .
>
> The Trustee did not properly investigate the "Feddy letter" prior to . . . using it as evidence against [Ms.] Coleman.
>
> The Trustee misrepresented information regarding newspaper articles.
>
> After confiscation of the homes, . . . [t]he Trustee refused access to allow the Colemans to obtain their personalties.
>
> . . . Ms. Simpson has made it difficult to obtain documents. . . . Ms. Simpson presented documents that were supposed to "be all of the documents taken from the homes," but documents were missing. The documents missing were important documents such as banking, tax records. . . .
>
> \* \* \*
>
> . . . Ms. Simpson neglected the properties under her care. . . . When thefts began to occur, the Trustee . . . did nothing. . . .

3. <u>Witness 4</u>

> This witness will establish the following facts. . . :
>
> \* \* \*

8

"Feddy" is Donald Federroll. . . . On May 20, 1999, while at the home with Mr. Gray to review documents, [Ms.] Coleman found two exculpatory letters from Donald Federroll.

Coleman has frequently requested bank records from the Trustee. Banking records and tax papers were in the home when it was confiscated. These records were not in the boxes presented as "all of the documents taken from Coleman's home."

4. Witness 5

This witness will establish the following facts. . . :

\* \* \*

. . . There was no attempt to reach [Ms.] Coleman . . . prior to taking action against [her] on May 13, 1999.

. . . [U]pon [c]ourt [o]rder Coleman was allowed to see her documents. . . . The box [of documents produced by the Trustee's attorneys] was insignificant to the core issues in the bankruptcy. Documents were missing from the box.

5. Witness 6

This witness will establish the following facts. . . :

. . . Had [the Trustee] spoken the creditors [about her intentions to participate in the conversion of Coleman Craten from a Chapter 11 to a Chapter 7], Ms. Simpson would have been informed of a recovery plan supported by some of the major creditors of the estate. . . . Ms. Simpson never review[ed] the recovery plan. . . .

. . . Ms. Simpson never disclosed Mr. Gray's relationship with Mr. Hyde to any of the parties in interest. The major creditors knew of Mr. Hyde's adverse interest in the estate at the time that Ms. Simpson took action against Coleman [Craten] . . . . There were creditors who would have objected to Ms. Simpson's conversion participation.

6. <u>Witness 7</u>

This witness will establish the following facts. . . :

> A creditor received a letter from the U.S. Trustee's office stating that because of their significant holdings that he may be entitled to special rights. The creditor owns [20%] of the debt of the estate. . . . Ms. Simpson indicated to him that . . . she had all of the assets and that he would get his money. Ms. Simpson . . . told him that he need not hire a lawyer. . . . She told him that he need not attend the § 341 creditor's meeting because she would take care of everything. At no time did Ms. Simpson indicate that the creditor had the right to request a new Trustee. . . . The creditor(s) indicate that if they had known of their rights they would have voted to replace the Trustee [because] they were upset that the Trustee had participated in the conversion without notifying them.

As discussed below, one of Ms. Coleman's allegations, if proven, might warrant some relief. Her remaining contentions have no merit.

<u>Discussion</u>

The standard for the removal of a bankruptcy trustee is set forth in 11 U.S.C. § 324(a). Section 324(a) provides that the court, after notice and a hearing, may remove a trustee for cause. 11 U.S.C. § 324(a). The Bankruptcy Code does not define the term "cause," and, as a result, courts must determine its meaning on a case-by-case basis. *Mobile Diagnostech, Inv. v. Cohen* (*In re Equimed, Inc.*), 267 B.R. 530, 532-33 (D. Md. 2001) (citing *In re Reed*, 178 B.R. 817, 821 (Bankr. D. Ariz. 1995)).

In this District, courts have defined the term "cause" as "reasons for which the law and sound public policy recognize as sufficient warrant for removal" and reasons which "relate to and affect the administration of the office and [which] must be restructed [sic] to something of a substantial nature directly affecting the rights and interests of the public." *In re Equimed, Inc.*, 267 B.R. at 533 (quoting *In re Baker*, 38 B.R. 705, 707 (D. Md. 1983)). A trustee has absolute discretion over the prosecution of litigation involving the

debtor's estate and should not be removed for a mistake in judgment if the judgment is both reasonable and discretionary . *In re Equimed, Inc.*, 267 B.R. at 534 (citing *In re Reed*, 178 B.R. at 821-22; *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990)). Accordingly, "[a] court should consider the best interests of the bankruptcy estate when determining if removal of a trustee is appropriate." *In re Equimed, Inc.*, 267 B.R. at 534.

Based on the arguments in Ms. Coleman's motion, her statements at the February 2000 hearing and the material in her proffer, Ms. Coleman's reasons for seeking removal can be placed into seven categories, *viz*: (1) failure to give notice;(2) failure to preserve estate assets; (3) failure to disclose the employment of an interested party; (4) failure to produce documents; (5) making false statements; (6) misleading creditors; and (7) loan sabotage. Each category will be addressed *seriatim*.

1. Failure to Give Notice

This category consists of three arguments; none of which have merit.

Ms. Coleman first contends that the Trustee should be removed for failing to immediately notify Ms. Coleman that the court appointed her as Trustee of Ms. Coleman's estate. Nothing in the Bankruptcy Code or Rules mandate that a Chapter 7 trustee notify a debtor of his or her appointment within a specific time frame. In this case, however, testimony shows that the Trustee took steps to notify Ms. Coleman shortly after her appointment. Mr. Fletcher testified that the Trustee attempted to contact Ms. Coleman on at least one occasion within days after she was appointed. That attempt was unsuccessful. However, Mr. Fletcher's testimony shows that Ms. Coleman received notice of the Trustee's appointment after she spoke with Coleman Craten's attorney regarding the conversion hearing, which took place only four days after the filing of her bankruptcy petition. Even if the Trustee failed to make an effort to notify Ms.

Coleman, she has not shown how the Trustee's failure to immediately notify her of the appointment would establish "cause" for removing the Trustee.

Ms. Coleman next argues that the Trustee should be removed for impounding her assets without prior notification. Standing alone, this allegation might justify removal inasmuch as public policy and experience teaches that a Chapter 7 debtor receive notice and an opportunity to secure new living arrangements before the trustee sells his or her property for the benefit of creditors.

This argument fails for two reasons, however. First, Mr. Fletcher testified as Ms. Coleman's witness that the Trustee attempted to contact Ms. Coleman prior to going to her residence to investigate her assets. In her proffer, Ms. Coleman has not produced specific testimony rebutting Mr. Fletcher's testimony. Second, this is not a case where the trustee failed to notify the debtor of an impending sale of estate property. The Trustee went to Ms. Coleman's residence to inventory and secure her property in order to prevent its likely dissipation. Ms. Coleman filed for bankruptcy protection at a time when at least one set of creditors had filed a civil suit alleging that she and Coleman Craten had defrauded them for hundreds of thousands of dollars. Accordingly, the circumstances surrounding her bankruptcy filing justified the Trustee's swift action. Ms. Coleman's argument does not establish a reason for which the law and public policy recognize as sufficient for the Trustee's removal or which relate to and affect the administration of her estate.

Lastly, she maintains that the Trustee should be removed for failing to notify her of the May 13, 1999, hearing regarding the conversion of Coleman Craten's case. This argument also fails for two reasons. First, Mr. Fletcher testified that the Trustee attempted to contact Ms. Coleman personally prior to the conversion hearing, without success. He further testified that the Trustee contacted Ms. Coleman

through Coleman Craten's attorney, Mr. Carmody. He indicated that he had spoken with Ms. Coleman and she had said she was unable to attend the emergency hearing. Ms. Coleman has not identified any witnesses or articulated any evidence rebutting Mr. Fletcher's testimony. Second, and more important, the Trustee did not have an obligation to notify Ms. Coleman of the conversion hearing. James and Carol Hyde filed the motion to convert Coleman Craten's case (P. 4, 5, and 6) and thus, they had a duty to notify Ms. Coleman. The Trustee, using her discretion as fiduciary of Ms. Coleman's estate, consented to the conversion because she believed it would benefit creditors of both estates. The court granted the motion because Coleman Craten was ineligible for Chapter 11 protection. Consequently, this argument does not provide "cause" for the Trustee's removal.

2. <u>Failure to Preserve Estate Assets</u>

Ms. Coleman asserts that the Trustee has neglected the assets of her estate and knowingly allowed thefts of property to occur without taking preventative measures. 11 U.S.C. § 704(2) provides that the trustee shall "be accountable for all [estate] property received." Applying Section 704(2), allegations that the trustee has failed to maintain estate assets substantially relate to and affect the administration of an estate and, if proven, might be sufficient to warrant removal.

In this case, however, Ms. Coleman has neither provided or proffered proof of the Trustee's failure to preserve estate assets. At the previous hearing and in her proffer, Ms. Coleman failed to identify particular examples of how the Trustee neglected estate assets. She also failed to identify specific articles of property that were stolen from the bankruptcy estate. Additionally, when he was questioned about Ms. Coleman's burglary allegations, Mr. Fletcher testified that the Trustee had investigated the claim and concluded that it was "unlikely that a theft had occurred at the residence." He further testified that the

Trustee installed surveillance cameras after the alleged burglary occurred. Ms. Coleman has not demonstrated that she has evidence to support her allegations of Trustee misconduct, much less rebut Mr. Fletcher's testimony. Therefore, she has not demonstrated sufficient "cause" regarding her theft allegations to warrant the Trustee's removal.

3. Failure to Disclose Employment of an Interested Party

Ms. Coleman next contends that the Trustee should be removed because, prior to filing the application to employ Financial Conservators, Inc. to assist in the liquidation of Ms. Coleman's estate, she failed to disclose Richard Gray's involvement in the state court litigation between Ms. Coleman and James and Carol Hyde. Mr. Gray is affiliated with Financial Conservators. Ms. Coleman insists that he is an "interested party" for purposes of her bankruptcy case because he worked on behalf of Mr. and Mrs. Hyde during the state court litigation. She reasons that Financial Conservators should not have been employed to assist in the liquidation of her assets.

Ms. Coleman has not proven that Mr. Gray is an "interested party." She has also failed to establish that the presence of Mr. Gray and Financial Conservators has prejudiced the rights of creditors in her bankruptcy case. Assuming, *arguendo*, that Mr. Gray is an "interested party," his presence alone would not warrant the Trustee's removal. Financial Conservators has assisted the Trustee in collecting and liquidating large amounts of Ms. Coleman's assets for the benefit of creditors; thus, their presence has been

helpful to the Trustee and Ms. Coleman's creditors. To remove the Trustee based on this allegation would not be in the best interests of Ms. Coleman's estate.

4. <u>Failure to Produce Documents</u>

This category relates to Ms. Coleman's allegations concerning the Trustee's failure to produce documents. 11 U.S.C. § 704(7) provides that the Trustee must "furnish such information concerning the estate and the estate's administration as is requested by a party in interest." Although it is difficult to tell from Ms. Coleman's proffer, the documents that the Trustee has allegedly withheld include various bank records and financial papers, which were allegedly taken from Ms. Coleman's residence when the Trustee impounded the home. In her proffer, Ms. Coleman has failed to identify which bank records and financial papers the Trustee has withheld. For that reason, the court should dismiss her allegation. If she identifies the missing documents and proves that the Trustee withheld them, however, Ms. Coleman's claim might justify consideration of the Trustee's removal, or some lesser sanction. Accordingly, Ms. Coleman must address specific questions at the upcoming hearing so that the Trustee may respond, namely: (1) what documents has the Trustee suppressed?; (2) what specific request was made by Ms. Coleman for those documents?; (3) what was the Trustee's response?; and (4) how do the documents relate to and affect the administration of Ms. Coleman's estate?

5. <u>Making False Statements</u>

This category relates to Ms. Coleman's claims that the Trustee lied to the court at the conversion hearing regarding two pieces of evidence she found at Ms. Coleman's residence, namely, the note written by Donald Federroll and a $400,000.00 deposit slip. Ms. Coleman has not identified how the Trustee misrepresented the evidence to the court. Moreover, even if her allegations are proven to be true, Ms.

Coleman has not established how the alleged misrepresentations relate to and affect the administration of her estate.

6. <u>Misleading Creditors</u>

This category consists of two allegations.

Ms. Coleman contends that the Trustee misled creditors by failing to disclose her intention to participate in the conversion of Coleman Craten to Chapter 7. Ms. Coleman has failed to articulate how the Trustee failed to inform creditors of her intention to participate at the hearing. She also has failed to demonstrate how that failure prejudiced the rights of Coleman Craten's creditors. Apparently, Ms. Coleman believes that the creditors would have opposed conversion if they had known of the Trustee's involvement in the hearing. Regardless of what she asserts, the short answer is that the Trustee's participation had no substantive affect whatsoever on the rights of Coleman Craten creditors. James and Carol Hyde filed the motion to convert Coleman Craten from a Chapter 11 to a Chapter 7. The Trustee exercised her discretion to participate in the hearing because she believed that conversion would benefit the creditors of both estates. The court granted the motion because Coleman Craten was a stockbroker, which made it ineligible for Chapter 11 treatment. Thus, the court would have converted Coleman Craten to a Chapter 7 even if the Trustee had not participated at the hearing. The bottom line is that Ms. Coleman's contention would not justify the Trustee's removal from either case.

Ms. Coleman next argues that the Trustee misled creditors into believing that she had "found hidden funds [in the estates] wherein the [c]reditors would be able to recapture their money." Even if proven, such a statement does not affect the administration of the estate. The trustee is to be commended if she kept

16

creditors informed.  Moreover, no creditor has complained that the Trustee has misled them and Ms. Coleman lacks standing to complain on this ground.

7. Loan Sabotage

Here, Ms. Coleman maintains that the Trustee should be removed because she hampered a prospective loan that she (allegedly) intended to pay off Coleman Craten's creditors.  There is no testimony showing that the Trustee blocked a loan to Ms. Coleman.  Instead, she asserts that the Trustee collaborated with the Baltimore Sun by making her filings in the case available to the newspaper.  The proffered testimony is that the Lender was upset over the article.  The short answer to his argument is that the Trustee is not accountable for what is published by the press based on material that is in the public record or how others react to the publicity.  Further, 11 U.S.C. § 704(1) provides that the Chapter 7 trustee has a duty to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest."  Coleman Craten's bankruptcy case is a Chapter 7 liquidation.  Therefore, the Trustee has a duty to liquidate the assets for the benefit of creditors, not to assist in a reorganization effort.  Consequently, the Trustee's proffered actions are not sufficient to justify her removal from the administration of Coleman Craten's case.   Ms. Coleman's argument has no merit as a matter of law.

**End of Opinion**


cc:     Monica Coleman
        2402 Battersea Place, Apt.302
        Baltimore, Maryland   21244

        Cornelius J. Carmody, Esquire
        P.O. Box 302

16940 York Road
Monkton, Maryland    21111

Kevin G. Hroblak, Esquire
Whiteford, Taylor & Preston
7 Saint Paul Street,  Suite 1400
Baltimore, Maryland    21202

Lori S. Simpson, Trustee
c/o Martin T. Fletcher, Esquire
Whiteford, Taylor & Preston, LLP
Seven St. Paul Street, Suite 1400
Baltimore, Maryland    21202

Nancy V. Alquist, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
300 East Lombard Street, 19th Floor
Baltimore, Maryland    21202-3268

Shahid and Jean Aziz
11417 Barrow Downs
Columbia, Maryland    21044

Office of the U.S. Trustee
300 West Pratt Street, Suite 350
Baltimore, Maryland    21201